# IN THE UNITED STATES DISTRICT COURT FOR THE

# EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| TRI-DAM, | ) | 1:11-cv-01304-AWI-SAB |
| | ) | |
| Plaintiff, | ) | ORDER RE: MOTION FOR |
| | ) | SUMMARY JUDGMENT |
| v. | ) | |
| | ) | (Doc. 18) |
| CHRIS KELLER; DAWN KELLER, | ) | |
| | ) | |
| Defendants. | ) | |
| ———————————————— | ) | |

## I. INTRODUCTION

Plaintiff Tri-Dam ("Plaintiff" or "Tri-Dam") has filed a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56.  For reasons discussed below, the Court shall defer decision on the motion pending further briefing from Tri-Dam.

## II. FACTS AND PROCEDURAL BACKGROUND

The facts of this case are undisputed.  Tulloch Reservoir, more commonly known as Lake Tulloch, is a man-made reservoir located near the city of Copperopolis, California.  It is part of Hydroelectric Project No. 2067, known as the Tulloch Project.  The Tulloch Project, a water supply/power project

constructed in the 1950s, is located along the Stanislaus River, mostly on private land in Tuolumne and Calaveras Counties.   The Tulloch Project includes Tulloch Dam and Reservoir, Tulloch Penstock, Tulloch Powerhouse and Tulloch Switchyard.  New Melones Reservoir, a part of the U.S. Bureau of Reclamation's Central Valley Project, discharges directly into Tulloch Reservoir. Downstream of Tulloch Reservoir is Goodwin Dam, a diversion dam by which the Oakdale Irrigation District, South San Joaquin Irrigation District and Stock East Water District divert water to their respective districts. The reservoir has a normal maximum water surface elevation of 510 feet.

Tri-Dam, a cooperative venture of the Oakdale and South San Joaquin Irrigation Districts, owns and operates the Tulloch Project under a license issued by the Federal Energy Regulatory Commission (FERC).  FERC requires each licensee obtain control over all lands needed for the operation and maintenance of a hydroelectric project and other project purposes, such as flowage, shoreline control and protection of environmental resources.  Tri-Dam received an initial license from FERC's predecessor to construct and operate the Tulloch Project effective January 1, 1955, for a term ending December 31, 2004.  Article 39 of this license gave Tri-Dam permission, with prior approval of FERC, for use of lands within the area defined as the "FERC Project Boundary."  For the Tulloch Project, this boundary encompasses an area of approximately 1,619 acres and includes all land within a 515-feet elevation contour (five feet above the normal maximum water surface elevation) surrounding Tulloch Reservoir.   Sixty-one percent of land within the FERC Project Boundary is privately owned, twenty-six percent of the land is owned by the Oakdale and South San Joaquin Irrigation Districts and twelve percent is owned either by the state or federal governments.

In 2002, Tri-Dam developed Tulloch Reservoir's most current Shoreline Management Plan ("SMP") in anticipation of obtaining a new license for the Tulloch Project.  Observing the FERC license required Tri-Dam to obtain FERC approval for (1) actions that would in any way reduce the storage capacity of Tulloch Reservoir and (2) use of lands within the FERC Project Boundary, the SMP recognized there was considerable public interest for development of the Tulloch Reservoir shoreline and that some of this development could conceivably have only minor impacts on reservoir

2

storage or project operations.  Accordingly, the SMP expressed Tri-Dam's need to approach FERC for general approval of minor development activities to facilitate such activities within the Project Boundary and avoid the need to obtain FERC approval for every individual development activity.

The SMP described the minor development activities for which Tri-Dam had requested FERC's approval.  These activities encompassed, as relevant here, a "private facilities program," which provided in pertinent part that (1) all parties desiring to construct, expand or rebuild a private single family facility (including dock structures) within the FERC Project Boundary must obtain authorization from Tri-Dam prior to the initiation of excavation or construction and (2) an awning, if installed, may not exceed the footprint of the dock area, excluding personal watercraft ports; overhangs are not permitted.  The SMP also outlined an "encroachment" permitting scheme through which parties could apply for – and Tri-Dam would issue – permits authorizing a particular use or facility within the FERC Project Boundary.  According to the SMP, all proposed development activities are subject to requirements of applying for and obtaining a Tri-Dam encroachment permit.

On December 23, 2002, Tri-Dam filed an application with FERC for a new license, pursuant to sections 4(e) and 15 of the Federal Power Act (FPA, 16 U.S.C §§ 791 et seq.), to continue operation and maintenance of the Tulloch Project; the SMP was included as an exhibit to the new license application.  On February 16, 2006, FERC issued a new license to Tri-Dam for a period of 39 years, 11 months subject to the terms and conditions of the FPA, which was incorporated into the license by reference.  (Between 2004 and 2006, Tri-Dam operated the Tulloch Project under an annual license pending the disposition of its new license application.)  Article 411 of this license approves the SMP.  Article 413 gives Tri-Dam the authority to grant permission for certain uses and occupancies of project lands and waters, including non-commercial piers, landings and boat docks, without prior FERC approval, and continuing responsibility to supervise and control the uses and occupancies for which it grants permission.  If a permitted use or occupancy violates any condition imposed by the license or by Tri-Dam, article 413 further gives Tri-Dam authority to take any lawful action necessary to correct the violation, including canceling the permission to use and occupy the

1   project lands and waters and requiring the removal of any non-complying structures and facilities.

2        In 2008, Chris Keller and Dawn Keller ("Defendants" or "the Kellers") purchased the real

3   property at 51 Paseo Delago, Copperopolis (95228-9414), located on the waterfront of Tulloch

4   Reservoir.  At the time of the Kellers' purchase, the property included a dock.  The dock is below

5   the 515-feet elevation contour surrounding Tulloch Reservoir and thus within the FERC Project

6   Boundary.  The Kellers replaced the awning covering the dock, extending it past the dock's footprint,

7   and installed two jet ski ports. However, they did not obtain permits for any of these improvements.

8        Tri-Dam filed this action against the Kellers on August 5, 2011.  On September 22, 2011,

9   Tri-Dam filed its first amended complaint against the Kellers for violations of the FPA, FERC

10  regulations and the SMP, seeking a permanent injunction prohibiting the Kellers from installing,

11  possessing or maintaining property within the Tri-Dam Project Boundary (1) without seeking prior

12  approval and obtaining a permit from Tri-Dam and (2) that is not in compliance with a permit

13  obtained from Tri-Dam.  Tri-Dam also sought an injunction requiring the Kellers to submit plans to

14  Tri-Dam for removal of property installed without approval of Tri-Dam.  On December 7, 2012, Tri-

15  Dam filed its motion for summary judgment.  The Kellers did not file an opposition to the motion.

16

17                            **III. LEGAL STANDARD**

18

19  "A party may move for summary judgment, identifying each claim or defense – or the part of each

20  claim or defense – on which summary judgment is sought.  The court shall grant summary judgment

21  if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled

22  to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party bears the initial burden

23  of "informing the district court of the basis for its motion, and identifying those portions of 'the

24  pleadings, depositions, answers to interrogatories, and admissions on file, together with the

25  affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."

26  *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *see* Fed. R. Civ.

27

28                                     4

P. 56(c)(1)(A).  "Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case."  *In re Oracle Corp. Securities Litigation,* 627 F.3d 376, 387 (2010) (citing *Celotex, supra,* at p. 325).  If the moving party meets its initial burden, the burden shifts to the non-moving party to present evidence establishing the existence of a genuine dispute as to any material fact.  *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 585-86, 106 S.Ct. 1348, 89 L.Ed.2d 538.  A court ruling on a motion for summary judgment must construe all facts and inferences in the light most favorable to the non-moving party.  *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  Even if the motion is unopposed, the movant is not absolved of the burden to show there are no genuine issues of material fact, *Henry v. Gill Industries, Inc.,* 983 F.2d 943, 949-50 (9th Cir. 1993), although the court may assume the movant's assertions of fact to be undisputed for the purposes of the motion and grant summary judgment if the facts and other supporting materials show the movant is entitled to it.  *See* Fed. R. Civ. P. 56(e)(2), (3).

## IV. DISCUSSION

***A. Tri-Dam's motion for summary judgment*** – As the basis for summary judgment, Tri-Dam first contends that because the Kellers' dock is below the 515-feet elevation contour and thus within the FERC Project Boundary, it is subject to the requirements of the SMP.  Tri-Dam further contends the Kellers were required to obtain a permit for the awning and jet ski ports under the SMP's encroachment permitting scheme, but that they never applied for a permit and would not have received one even if they had because the dock does not conform to the SMP and could not be approved as configured with an overhang of the awning beyond the dock's footprint.  From this, Tri-Dam contends it has authority under article 413 of the FERC License to order the Kellers to remove and/or relocate the dock and jet ski ports. Having reviewed the pleadings of record and all competent and admissible evidence submitted, the Court finds Tri-Dam has failed to satisfy its initial burden.

The FPA authorizes FERC "[t]o issue licenses to citizens of the United States, or to any association of such citizens, or to any corporation organized under the laws of the United States or any State thereof, or to any State or municipality for the purpose of constructing, operating, and maintaining dams, water conduits, reservoirs, power houses, transmission lines, or other project works necessary or convenient for the development and improvement of navigation and for the development, transmission, and utilization of power[.]" 16 U.S.C. § 797(e).  As a condition of obtaining a license, a proposed project "shall be such as in the judgment of [FERC] will be best adapted to a comprehensive plan for improving or developing a waterway or waterways for the use or benefit of interstate or foreign commerce, for the improvement and utilization of water-power development . . . and for other beneficial public uses[.]" *Id.*, § 803(a)(1).  "Thus, FERC retains 'the obligation to insure that any uses of the [project] will be consistent with the beneficial public purposes for which a license has been issued.' [Citation.] Consistent with this obligation, FERC may authorize a licensee to permit project property use for non-project purposes . . . . [Citation.]" *VA Timberline, LLC v. Appalachian Power Co.,* 2008 WL 269544 (W.D.Va. 2008) (unpublished), *4.

Articles 411 and 413 of Tri-Dam's FERC license essentially permit Tri-Dam to regulate certain uses and occupancies of land in the FERC Project Boundary without prior FERC approval, in accordance with the provisions of the SMP.  However, the license merely gives Tri-Dam *authority* to do so; it does not give Tri-Dam the *right* to do so.  Article 5 of license provides in pertinent part, "The Licensee, within five years from the date of issuance of the license, *shall acquire title in fee or the right to use in perpetuity all lands*, other than lands of the United States, necessary or appropriate for construction[,] maintenance and operation of the project."  (Emphasis added.)  In other words, Tri-Dam must still have obtained independent control – through flowage rights, easement deeds or fee simple ownership – of land needed to operate and maintain Tulloch Project.

According to the SMP, Tri-Dam acquired property rights to the FERC Project Boundary by obtaining flowage easements for all of the land within the boundary.  These easements purportedly allow Tri-Dam to overflow, flood and cover said land with the water created by the construction and

6

operation of Tulloch Dam; enter upon the land to clear, destroy or dispose of timber or other natural growth and any obstruction, accumulation or trash that would interfere with the use of Tulloch Reservoir or render the reservoir unsafe or unsanitary; and grant the right of ingress to and egress from said land for any of the above purposes – in effect, allowing Tri-Dam to use the land for purposes authorized by the FERC license.  Problematically for Tri-Dam, no evidence of any recorded easements has been provided to the Court.  The only "evidence" that easements even exist comes from statements in the SMP, which is purely hearsay.  Under these circumstances, Tri-Dam cannot show it obtained sufficient property rights to regulate any of the area within the FERC Project Boundary, let alone the area encompassing the Kellers' lot.  Therefore, even assuming the Kellers' dock violated the terms of the SMP and Tri-Dam's FERC license in a manner sufficient to establish the irreparable injury needed to underlie Tri-Dam's prayer for a permanent injunction (an issue the Court need not reach here), summary judgment cannot be granted in favor of Tri-Dam.

# V. DISPOSITION

Based on the foregoing, disposition of Tri-Dam's motion for summary judgment is DEFERRED pending further briefing on the easement issue raised above.  Tri-Dam is, of course, encouraged to brief any other easement-related issues it deems appropriate.

Tri-Dam shall file such briefing by 4:00 p.m. on Friday, March 29, 2013.  The Kellers may file a response to Tri-Dam's briefing by 4:00 p.m. on Friday, April 26, 2013.

All future dates are hereby VACATED.

IT IS SO ORDERED.

Dated:    March 6, 2013

_____
SENIOR  DISTRICT  JUDGE

8