1
2
3
4
5
6
7
8          **IN THE UNITED STATES DISTRICT COURT FOR THE**
9              **EASTERN DISTRICT OF CALIFORNIA**
10
11     TRI-DAM,                          )      1:11-CV-01304-AWI-SAB
                                          )
12               Plaintiff,              )      **ORDER RE: MOTION FOR**
                                          )      **SUMMARY JUDGMENT**
13          v.                            )
                                          )
14     CHRIS KELLER; DAWN KELLER,         )
                                          )
15               Defendants.             )
                                          )      [Docs. 18, 30, 34]
16     _____)
17
18
19                    **I. INTRODUCTION**
20
21          Plaintiff Tri-Dam ("Plaintiff" or "Tri-Dam") has filed a motion for summary judgment
22     pursuant to Federal Rule of Civil Procedure 56. For reasons discussed below, the Court shall
23     deny Tri-Dam's motion because a genuine issue of material fact exists.
24
25              **II. FACTS AND PROCEDURAL BACKGROUND**
26
27          The facts of this case are undisputed.  Tulloch Reservoir, also known as Lake Tulloch, is
28     a man-made reservoir located near the city of Copperopolis, California.  It is part of

Hydroelectric Project No. 2067, known as the Tulloch Project.  The Tulloch Project, constructed in the 1950s, is a water supply/power project located along the Stanislaus River, mostly on private land in Tuolomne and Calaveras Counties.  The Tulloch Project includes Tulloch Dam, Tulloch Reservoir, Tulloch Penstock, Tulloch Powerhouse and Tulloch Switchyard.  New Melones Reservoir, part of the U.S. Bureau of Reclamation's Central Valley Project, discharges directly into Tulloch Reservoir.  Goodwin Dam, a diversion dam of the Oakdale Irrigation District, South San Joaquin Irrigation District, and Stock East Irrigation District, is downstream of Tulloch Reservoir.  The reservoir has a normal maximum water surface elevation of 510 feet.

Tri-Dam, a cooperative venture of the Oakdale and South San Joaquin Irrigation Districts, owns and operates the Tulloch Project under a license issued by the Federal Energy Regulatory Commission (FERC).  FERC requires each licensee to obtain control over all lands needed for the operation and maintenance of a hydroelectric project and other project purposes, such as flowage, shoreline control and protection of environmental resources.  Tri-Dam received an initial license from FERC's predecessor to construct and operate the Tulloch Project from January 1, 1955 to December 31, 2004.  Article 39 of this license gave Tri-Dam the permission, with prior approval of FERC, for use of lands within the area defined as the "FERC Project Boundary."  For Tulloch Project, this boundary encompasses an area of approximately 1,619 acres and includes all land within a 515-feet elevation contour (five feet above the normal maximum water surface elevation) surrounding Tulloch Reservoir.  Sixty-one percent of land within the FERC Project Boundary is privately owned, twenty-six percent of the land is owned by the Oakdale and South San Joaquin Irrigation Districts and twelve percent is owned either by the state or federal governments.

In 2002, Tri-Dam developed Tulloch Reservoir's most current Shoreline Management Plan ("SMP") in anticipation of obtaining a new license for the Tulloch Project.  Complying with the FERC license required Tri-Dam to obtain FERC approval for (1) actions that would in any way reduce the storage capacity of Tulloch Reservoir and (2) use of lands within the FERC

1   Project Boundary.  The SMP recognized that there was considerable public interest for

2   development of the Tulloch Reservoir shoreline and that some of this development could

3   conceivably have only minor impacts on reservoir storage or project operations.  Accordingly,

4   the SMP expressed Tri-Dam's need to approach FERC for general approval of minor

5   development activities to facilitate such activities within the project Boundary and avoid the need

6   to obtain FERC approval for every individual development activity.

7        The SMP described the minor development activities for which Tri-Dam had requested

8   FERC's approval.  These activities included  a "private facilities program", which provided in

9   pertinent part that (1) all parties desiring to construct, expand, or rebuild a private single family

10  facility (including dock structures) within the FERC Project Boundary must obtain authorization

11  from Tri-Dam prior to beginning excavation or construction and (2) an awning, if installed,

12  cannot exceed the footprint of the dock area excluding personal water craft ports; overhangs are

13  not permitted.  The SMP also outlined an "encroachment" permitting scheme.  In this scheme,

14  parties could apply for, and Tri-Dam would issue, permits authorizing a particular use or facility

15  within the FERC Project Boundary.  According to the SMP, all proposed development activities

16  are subject to requirements of applying for and obtaining a Tri-Dam encroachment permit.

17       On December 23, 2002, Tri-Dam filed an application with FERC for a new license,

18  pursuant to sections 4(e) and 15 of the Federal Power Act (FPA, 16 U.S.C. §§ 791 et seq.), to

19  continue operations and maintenance of the Tulloch Project; the SMP was included as an exhibit

20  to the new license application.  On February 16, 2006, FERC issued a new license to Tri-Dam for

21  a period of 39 years, 11 months subject to the terms and conditions of the FPA, which was

22  incorporated into the license by reference.  (Between 2004 and 2006, Tri-Dam operated the

23  Tulloch Project under an annual license pending the disposition of its new license application.)

24  Article 411 of this license approves the SMP.   Article 413 gives Tri-Dam the authority to grant

25  permission for certain uses and occupancies of project lands and waters, including non-

26  commercial piers, landings, and boat docks, without prior FERC approval, and continuing

27

28                                            3

responsibility to supervise and control the uses and occupancies for which it grants permission. If a permitted use or occupancy violates any condition imposed by the license or by Tri-Dam, article 413 gives Tri-Dam further authority to take any lawful action necessary to correct the violation, including cancelling the permission to use and occupy the project lands and waters and requiring the removal of any non-complying structures and facilities.

In 2008, Chris Keller and Dawn Keller ("Defendants" or "the Kellers") purchased the real property at 51 Paseo Delago, Copperopolis (95228-9414), located on the waterfront of Tulloch Reservoir.  At the time of the Kellers' purchase, the property included a dock.  The dock is below the 515-feet elevation contour surrounding Tulloch Reservoir and thus within the FERC Project Boundary.  The Kellers replaced the awning covering the dock, extending it past the dock's footprint, and installed two jet-ski ports.  However, they did not obtain permits for any of these improvements.

Tri-Dam filed this action against the Kellers on August 5, 2011.  On September 22, 2011, Tri-Dam filed its first amended complaint against the Kellers for violations of the FPA, FERC Regulations and the SMP, seeking a permanent injunction prohibiting the Kellers from installing, possessing or maintaining property within the Tri-Dam Project Boundary (1) without seeking prior approval and obtaining a permit from Tri-Dam and (2) that is not in compliance with a permit obtained from Tri-Dam.  Tri-Dam also sought an injunction requiring the Kellers to submit plans to Tri-Dam for removal of property installed without approval of Tri-Dam.  On December 7, 2012, Tri-Dam filed its motion for summary judgment.  The Kellers did not file an opposition to the motion.

On March 7, 2013, this Court issued an order deferring disposition on the motion for summary judgment pending further briefing as to evidence of easements allowing Tri-Dam to regulate the area within the FERC Project Boundary, including the Kellers' dock.  Tri-Dam submitted evidence of these permanent, express, flowage easements for the area with the FERC Project Boundary on March 29, 2013.  On April 26, 2013, the Kellers filed an opposition to Tri-

4

1  Dam's motion for summary judgment.  On May 1, 2013, Tri-Dam filed a response to the Kellers'

2  opposition.

3  **III. LEGAL STANDARD**

4

5  "A party may move for summary judgment, identifying each claim or defense – or the part

6  of each claim or defense – on which summary judgment is sought.  The court shall grant summary

7  judgment if the movant shows that there is no genuine dispute as to any material fact and the

8  movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The moving party bears

9  the initial burden of "informing the district court of the basis for its motion, and identifying those

10  portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together

11  with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of

12  material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265

13  (1986); *see* Fed. R. Civ. P. 56(c)(1)(A).  "Where the non-moving party bears the burden of proof

14  at trial, the moving party need only prove that there is an absence of evidence to support the non-

15  moving party's case." *In re Oracle Corp. Securities Litigation,* 627 F.3d 376, 387 (2010) (citing

16  *Celotex, supra,* at p. 325).

17  If the moving party meets its initial burden, the burden shifts to the non-moving party to

18  present evidence establishing the existence of a genuine dispute as to any material fact.  *See*

19  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 585-86, 106 S.Ct. 1348, 89

20  L.Ed.2d 538.  A court ruling on a motion for summary judgment must construe all facts and

21  inferences in the light most favorable to the non-moving party.  *See Anderson v. Liberty Lobby,*

22  *Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  Even if the motion is

23  unopposed, the movant is not absolved of the burden to show there are no genuine issues of

24  material fact, *Henry v. Gill Industries, Inc.,* 983 F.2d 943, 949-50 (9th Cir. 1993), although the

25  court may assume the movant's assertions of fact to be undisputed for the purposes of the motion

26

27

28

1   and grant summary judgment if the facts and other supporting materials show the movant is

2   entitled to it.  *See* Fed. R. Civ. P. 56(e)(2), (3).

3

4                                    **IV. DISCUSSION**

5

6   ***A. Tri-Dam's motion for summary judgment***- Tri-Dam contended in its first motion for summary

7   judgment that because the Kellers' dock is below the 515-feet elevation contour, it is within the

8   FERC Project Boundary and thus subject to the requirements of the SMP.  Tri-Dam also

9   contended that it has the authority to order the Kellers to remove and/or relocate the dock and jet

10  ski ports because (1) the Kellers were required to obtain a permit for the awning and jet ski ports,

11  (2) the Kellers never applied for a permit, and (3) they would not have received one had they

12  applied because the Kellers' dock does not conform to the SMP specifications.  This Court found

13  that while the FERC license gives Tri-Dam the *authority* to regulate certain uses and occupancies

14  of land in the FERC Project Boundary without prior FERC approval, it does not give Tri-Dam the

15  *right* to do so.  This is because Tri-Dam must still have obtained independent control of land

16  needed to operate and maintain Tulloch Project.  In response, Tri-Dam submitted evidence of two

17  flowage easements acquired by the Oakdale Irrigation District and the South San Joaquin

18  Irrigation District for all the land within the FERC Project Boundary.  These easements do allow

19  Tri-Dam to use the land for purposes authorized by the FERC license.[1]  However, there remains a

20  question of material fact whether Tri-Dam's rights under the flowage easement extend to

21  regulating and removing the Kellers' dock improvements.  Therefore, Tri-Dam's motion for

22  summary judgment cannot be granted.

23

24  ───────────────

25      [1] Defendants contend that Tri-Dam is not a joint venture of the Oakdale Irrigation District
    and South San Joaquin Irrigation District, and therefore the flowage easements do not belong to
    Tri-Dam.  *See* Defendants' Supplemental Brief in Opposition to Tri-Dam's Motion for Summary
26  Judgment.  However, this Court has already found that Tri-Dam is a "cooperative venture of the
    Oakdale and South San Joaquin Irrigation Districts."  *See* Order Re: Motion for Summary
27  Judgment.  Therefore, Tri-Dam can exercise the flowage easement rights.

28                                          6

The evidence shows that in 1956 and 1957, the Oakdale Irrigation District and South San Joaquin Irrigation District obtained permanent express flowage easements for the land within the FERC Project Boundary from Joe Sanguinetti (the "Sanguinetti easement") and the estate of Millie Mitchell (the "Mitchell easement").  Both conveyances grant to the Oakdale Irrigation District and the South San Joaquin Irrigation District the following rights:

> "Permanent easement rights in and over the land hereinafter described...for the following uses and purposes:
>
> (a) The right to permanently overflow, flood, and cover said hereinafter designated land with the flood, slack, or back water created by the construction and operation of the Tulloch Dam across the Stanislaus River;
>
> (b) The right to enter upon said land from time to time and clear, destroy, or dispose of any timber or other natural growth, and any obstructions, accumulations, trash, filth and any other thing which would in any way interfere with the use of said reservoir, or the waters therein, or tend to render unsafe or unsanitary either the reservoir created by said Dam or the margin thereof;
>
> (c)The right to ingress to and egress from said lands for the purposes aforesaid."

*See* Exhibits A and B of Plaintiff's Request for Judicial Notice.

Tri-Dam contends that this easement gives Tri-Dam the right under the SMP and FERC licenses to remove the Kellers' dock improvements.  The easements do grant Tri-Dam the right to enter the land from time to time and "clear, destroy, or dispose of . . . any obstructions . . . and any other thing which would in any way interfere with the use of said reservoir, or the waters therein, or tend to render unsafe or unsanitary either the reservoir . . . or the margin thereof."  *See* Exhibits A and B of Plaintiff's Request for Judicial Notice.  However, it is not clear that the Kellers' dock improvements interfere with the safety, sanitation, or use of the Tulloch Reservoir or its margins.

To resolve property disputes, such as the issue of interpretation of an easement, state law is generally followed.  *See Cortese v. United States,* 782 F.2d 845, 849 (9th Cir. 1986); *see also United States v. Park*, 536 F.3d 1058, 1061 (9th Cir. 2008).  "The general rule is clearly established that . . . the owner of the servient tenement may make any use of the land that does not interfere unreasonably with the easement."  *City of Pasadena v. California-Michigan Land & Water Co.*, 17 Cal. 2d 576, 579, 110 P.2d 983, 985 (1941) (internal citations omitted).  "Whether

1  a particular use of an easement by either the servient or dominant owner unreasonably interferes

2  with the rights of the other owner is a question of fact."   *Red Mountain, LLC. v. Fallbrook Pub.*

3  *Util. Dist.*, 143 Cal. App. 4th 333, 350, 48 Cal. Rptr. 3d 875, 889 (2006) (internal citations

4  omitted).

5        The Mitchell and Sanguinetti easements give Tri-Dam the right to clear, destroy, or

6  dispose of "obstructions" or "any other thing" that in any way interferes with the use, safety, or

7  sanitariness of the dam and its margin.  Tri-Dam has not shown that the Kellers' altered dock

8  interferes, let alone unreasonably interferes, with the use, safety, or sanitariness of the Tulloch

9  Project.  It is not clear that the flowage easements grant Tri-Dam the right to remove the Kellers'

10  dock improvements because it is not clear that the Kellers' dock improvements constitute an

11  interference with Tri-Dam's easement rights.  Consequently, a genuine issue of material fact

12  exists whether the scope of the easements grant Tri-Dam the right to remove the Kellers' dock

13  improvements.  Because Tri-Dam has not shown that there is no genuine dispute as to any

14  material fact, summary judgment for Tri-Dam cannot be granted.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## V. DISPOSITION

Based on the foregoing, Tri-Dam's motion for summary judgment is DENIED.  The Court refers the case to the Magistrate Judge for a trial-setting conference.

IT IS SO ORDERED.

Dated:    June 7, 2013    

_____

SENIOR  DISTRICT  JUDGE

9