# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **TRI-DAM,** | **CASE NO. 1:11-CV-1304 AWI SMS** |
| **Plaintiff,** | **PRETRIAL ORDER** |
| | **Motions In Limine Hearing and Trial Confirmation:** |
| **v.** | September 29, 2014 |
| | 1:30 p.m., Courtroom 2 |
| **CHASE AND DAWN KELLER,** | |
| | **Trial:** October 28, 2014 |
| **Defendants.** | 8:30 a.m., Courtroom 2 |
| | **RULES OF CONDUCT** |

The pretrial conference was held on August 20, 2014.    Trial in this matter is set for October 28, 2014.   The parties currently estimate that the trial shall take between three and four days.

## I.  Jurisdiction and Venue

This Court has original jurisdiction over this case pursuant to 28 U.S.C. sections 1331 and 1337, and section 317 of the Federal Power Act ("FPA"), 16 U.S.C. § 825p, which confers jurisdiction on the federal district courts for violations of the FPA as well as actions at law brought to enforce liabilities and duties created under FPA.

Venue is proper under 28 U.S.C. section 1391(b) and (c), as Defendants reside within the jurisdiction of this Court and the property subject to which this claim arises is situated in Calaveras County, California, which is within the judicial district of this Court.

## II.  Jury Trial

Plaintiff does not believe that a jury trial is necessary. Defendants have requested a jury

1   trial. The issue of defendants' entitlement to a jury trial will be briefed by the parties in their

2   motions in limine unless an agreement regarding the use of a jury is made prior to September 8,

3   2014.

4   **III.  Facts**

5        A.  Undisputed Facts

6   The facts of this case are undisputed. Tulloch Reservoir, also known as Lake Tulloch, is a man-

7   made reservoir located near the city of Copperopolis, California. It is part of Hydroelectric Project

8   No. 2067, known as the Tulloch Project. The Tulloch Project, constructed in the 1950s, is a water

9   supply/power project located along the Stanislaus River, mostly on private land in Tuolomne and

10  Calaveras Counties. The Tulloch Project includes Tulloch Dam, Tulloch Reservoir, Tulloch

11  Penstock, Tulloch Powerhouse and Tulloch Switchyard. New Melones Reservoir, part of the U.S.

12  Bureau of Reclamation's Central Valley Project, discharges directly into Tulloch Reservoir.

13  Goodwin Dam, a diversion dam of the Oakdale Irrigation District, South San Joaquin Irrigation

14  District, and Stock East Irrigation District, is downstream of Tulloch Reservoir. The reservoir has

15  a normal maximum water surface elevation of 510 feet.

16        Tri-Dam, a cooperative venture of the Oakdale and South San Joaquin Irrigation

17  Districts, owns and operates the Tulloch Project under a license issued by the Federal Energy

18  Regulatory Commission (FERC). FERC requires each licensee to obtain control over all lands

19  needed for the operation and maintenance of a hydroelectric project and other project purposes,

20  such as flowage, shoreline control and protection of environmental resources. Tri-Dam received an

21  initial license from FERC's predecessor to construct and operate the Tulloch Project from January

22  1, 1955 to December 31, 2004. Article 39 of this license gave Tri-Dam the permission, with prior

23  approval of FERC, for use of lands within the area defined as the "FERC Project Boundary." For

24  Tulloch Project, this boundary encompasses an area of approximately 1,619 acres and includes all

25  land within a 515-feet elevation contour (five feet above the normal maximum water surface

26  elevation) surrounding Tulloch Reservoir. Sixty-one percent of land within the FERC Project

27  Boundary is privately owned, twenty-six percent of the land is owned by the Oakdale and South

28

2

1  San Joaquin Irrigation Districts and twelve percent is owned either by the state or federal

2  governments.

3       In 2002, Tri-Dam developed Tulloch Reservoir's most current Shoreline Management Plan

4  ("SMP") in anticipation of obtaining a new license for the Tulloch Project. Complying with the

5  FERC license required Tri-Dam to obtain FERC approval for (1) actions that would in any way

6  reduce the storage capacity of Tulloch Reservoir and (2) use of lands within the FERC Project

7  Boundary. The SMP recognized that there was considerable public interest for development of the

8  Tulloch Reservoir shoreline and that some of this development could conceivably have only minor

9  impacts on reservoir storage or project operations. Accordingly, the SMP expressed Tri-Dam's

10  need to approach FERC for general approval of minor development activities to facilitate such

11  activities within the project Boundary and avoid the need to obtain FERC approval for every

12  individual development activity.

13       The SMP described the minor development activities for which Tri-Dam had requested

14  FERC's approval. These activities included a "private facilities program", which provided in

15  pertinent part that (1) all parties desiring to construct, expand, or rebuild a private single family

16  facility (including dock structures) within the FERC Project Boundary must obtain authorization

17  from Tri-Dam prior to beginning excavation or construction and (2) an awning, if installed, cannot

18  exceed the footprint of the dock area excluding personal water craft ports; overhangs are not

19  permitted. The SMP also outlined an "encroachment" permitting scheme. In this scheme, parties

20  could apply for, and Tri-Dam would issue, permits authorizing a particular use or facility within

21  the FERC Project Boundary. According to the SMP, all proposed development activities are

22  subject to requirements of applying for and obtaining a Tri-Dam encroachment permit.

23       On December 23, 2002, Tri-Dam filed an application with FERC for a new license,

24  pursuant to sections 4(e) and 15 of the Federal Power Act (FPA, 16 U.S.C. §§791 et seq.), to

25  continue operations and maintenance of the Tulloch Project; the SMP was included as an exhibit

26  to the new license application. On February 16, 2006, FERC issued a new license to Tri-Dam for a

27  period of 39 years, 11 months subject to the terms and conditions of the FPA, which was

28  incorporated into the license by reference. (Between 2004 and 2006, Tri-Dam operated the

1  Tulloch Project under an annual license pending the disposition of its new license application.)

2  Article 411 of this license approves the SMP. Article 413 gives Tri-Dam the authority to grant

3  permission for certain uses and occupancies of project lands and waters, including noncommercial

4  piers, landings, and boat docks, without prior FERC approval, and continuing responsibility to

5  supervise and control the uses and occupancies for which it grants permission. If a permitted use

6  or occupancy violates any condition imposed by the license or by Tri-Dam, article 413 gives Tri-

7  Dam further authority to take any lawful action necessary to correct the violation, including

8  cancelling the permission to use and occupy the project lands and waters and requiring the

9  removal of any noncomplying structures and facilities.

10      In 2008, Chris Keller and Dawn Keller ("Defendants" or "the Kellers") purchased the real

11  property at 51 Paseo Delago, Copperopolis (95228-9414), located on the waterfront of Tulloch

12  Reservoir. At the time of the Kellers' purchase, the property included a dock. The dock is below

13  the 515-feet elevation contour surrounding Tulloch Reservoir and thus within the FERC Project

14  Boundary. The Kellers replaced the awning covering the dock, extending it past the dock's

15  footprint, and installed two jet-ski ports. However, they did not obtain permits for any of these

16  improvements.

17      Tri-Dam filed this action against the Kellers on August 5, 2011. On September 22, 2011,

18  Tri-Dam filed its first amended complaint against the Kellers for violations of the FPA, FERC

19  Regulations and the SMP, seeking a permanent injunction prohibiting the Kellers from installing,

20  possessing or maintaining property within the Tri-Dam Project Boundary (1) without seeking prior

21  approval and obtaining a permit from Tri-Dam and (2) that is not in compliance with a permit

22  obtained from Tri-Dam. Tri-Dam also sought an injunction requiring the Kellers to submit plans to

23  Tri-Dam for removal of property installed without approval of Tri-Dam.

24      B.  Disputed Facts

25      Defendants contest all allegations and averments in the First Amended Complaint (Docket

26  No. 8) other than those enumerated above.

27      C.  Disputed Evidentiary Issues

28

4

1    The parties have indicated that they do not reasonably anticipate any specific disputes

2    concerning the admissibility of evidence or use of demonstratives at trial.

3

4    **IV. Relief Sought**

5    Tri-Dam does not seek monetary damages. It seeks a permanent injunction: (1) prohibiting

6    Defendants from installing, possessing, or maintaining property within the Project Boundary

7    without seeking prior approval and obtaining a permit from Tri-Dam; (2) prohibiting Defendants

8    from installing, possessing, or maintaining property within the Project Boundary that is not in

9    compliance with a permit obtained from Tri-Dam; and (3) requiring Defendants within ten days of

10   the permanent injunction to submit plans to Tri-Dam for removal of their property within the

11   Project Boundary that was installed without prior approval from Tri-Dam. Tri-Dam also seeks its

12   costs for prosecuting this action and reserves its right to seek reasonable attorney's fees.

13   Defendants oppose the relief sought on the grounds that to grant the relief would extend

14   rights to Tri-Dam which were neither granted under the flowage easements, nor by subsequent

15   property owners.

16   **V.  Points of Law**

17                          PLAINTIFFS' POINTS OF LAW

18   Tri-Dam's only claim is for a permanent injunction. A permanent injunction is appropriate

19   where a plaintiff establishes "(1) that it has suffered an irreparable injury; (2) that remedies

20   available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that,

21   considering the balance of hardships between the plaintiff and defendant, a remedy in equity is

22   warranted; and (4) that the public interest would not be disserved by a permanent injunction."

23   *Northern Cheyenne Tribe v. Norton*, 503 F.3d 836, 843 (9th Cir. 2007) (quoting *eBay Inc. v.*

24   *MercExchange, L.L.C.,* 547 U.S. 388, 391 (2006)). "The decision to grant or deny permanent

25   injunctive relief is an act of equitable discretion by the district court, reviewable on appeal for

26   abuse of discretion." *Id*. at 391. Tri-Dam has established all four elements entitling it to a

27   permanent injunction against Defendants. Defendants have not established and cannot establish a

28   viable affirmative defense to Tri-Dam's claim for a permanent injunction.

5

In response to Defendants' below statement, Tri-Dam believes that it has the authority to enforce the SMP irrespective of its easement rights and that the Court therefore need not apply state property law to resolve this dispute. This is not a simple real property dispute but rather one that involves the violation of a federal license issued by FERC. In addition, if necessary, Tri- Dam will prove at trial that Defendants' unauthorized improvements within the Project Boundary, including their dock, oversized awning, boat lift and jet ski ports, unreasonably interfere with Tri-Dam's easement.

### DEFENDANTS' POINTS OF LAW

Tri-Dam asserts it is entitled to a permanent injunction based on rights it has acquired over Defendants' property pursuant to flowage easements encumbering Defendants' property. The Court generally applies California law to resolve issues of interpretation of an easement in this matter. *See Cortese v. United States,* 782 F.2d 845, 849 (9th Cir. 1986); *see also United States v. Park*, 536 F.3d 1058, 1061 (9th Cir. 2008).

The rule of law has been established that ". . . the owner of the servient tenement may make any use of the land that does not interfere unreasonably with the easement." *City of Pasadena v. California-Michigan Land & Water Co.*, 17 Cal. 2d 576, 579, 110 P.2d 983, 985 (1941) (internal citations omitted). "Whether a particular use of an easement by either the servient or dominant owner unreasonably interferes with the rights of the other owner is a question of fact." *Red Mountain, LLC. v. Fallbrook Pub.Util. Dist.*, 143 Cal. App. 4th 333, 350, 48 Cal. Rptr. 3d 875, 889 (2006) (internal citations omitted). Tri-Dam the right to clear, destroy, or dispose of obstructions or things that in any way interferes with the use, safety, or sanitariness of the dam and its margin. The Defendants' dock does not unreasonably interfere with the use, safety, or sanitariness of the dam. In addition, the flowage easements do not grant Tri-Dam the right to remove Defendants' dock improvements because Defendants' dock improvements do not unreasonably interfere with Tri-Dam's easement rights. The rights of Tri-Dam over Defendants' property flow from the easements, and Tri-Dam's FERC license has not extended the rights of Tri-Dam over Defendants' property. In summary, the elements required for the issuance of a permanent injunction are not present.

**VI. Abandoned Issues**

None at this time.

**VII.  Witnesses**

The following is a list of witnesses that the parties expect to call at trial, including rebuttal and impeachment witnesses.  NO WITNESS, OTHER THAN THOSE LISTED IN THIS SECTION, MAY BE CALLED AT TRIAL UNLESS THE PARTIES STIPULATE OR UPON A SHOWING THAT THIS ORDER SHOULD BE MODIFIED TO PREVENT "MANIFEST INJUSTICE."  Fed. R. Civ. P. 16(e); Local Rule 281.

A. Joint List:

None

B. Plaintiff's List:

1.  Dan Pope
    Former Tri-Dam General Manager
    c/o Downey Brand LLP

2.  Susan Larson
    FERC License Coordinator of Tri-Dam
    c/o Downey Brand LLP

3.  Chris Keller
    Defendant
    c/o Defendants' counsel

4.  Dawn Keller
    Defendant
    c/o Defendants' counsel

5.  Tom Ruhl
    Tri-Dam Maintenance Supervisor
    c/o Downey Brand LLP

6.  Merle Holman
    5950 Green Springs Road,
    Jamestown, CA 95327

7.  Paul Wild
    14775 Mono Way
    Sonora, CA 95370
    (209) 533-4315

8.  Scott Mortensen
    1825 Calle Del Sol
    Livermore, CA 94551
    (918) 341-6811

9.  Ron Massei
    Contact information equally available to Defendants

10. Ron Berry
    Tri-Dam General Manager
    c/o Downey Brand LLP

.

11. J. Mark Robinson
    JMR Energy LLC
    2505 Soapstone Dr.
    Reston, VA 20191

C. Defendants' List:

1.  Dan Pope
    Former Tri-Dam General Manager
    c/o Plaintiff's counsel

2.  Susan Larson
    FERC License Coordinator of Tri-Dam
    c/o Plaintiff's counsel

3.  Chris Keller
    c/o Defendants' counsel

4.  Dawn Keller
    c/o Defendants' counsel

5.  Merle Holman
    5950 Green Springs Road,
    Jamestown, CA 95327

6.  Person Most Knowledgeable Tri-Dam
    c/o Plaintiff's counsel

7.  Person Most Knowledgeable Tri-Dam FERC
    888 First Street, NE
    Washington, DC 20426

8. Walter E. Sadler
c/o Defendants' counsel

## VIII. Exhibits

The following is a list of documents or other exhibits that the parties expect to offer at trial. NO EXHIBIT, OTHER THAN THOSE LISTED IN THIS SECTION, MAY BE ADMITTED UNLESS THE PARTIES STIPULATE OR UPON A SHOWING THAT THIS ORDER SHOULD BE MODIFIED TO PREVENT "MANIFEST INJUSTICE."  Fed. R. Civ. P. 16(e); Local Rule 16-281(b)(11).

A. Plaintiff's Exhibits:

1. Tri-Dam's 1979 FERC license (TRI00001-TRI00025)

2. Tri-Dam's 2002 Shoreline Management Plan (TRI00026-TRI00046)

3. Tri-Dam's 2006 FERC license (TRI00047-TRI00094)

4. Defendants' Answer to the Complaint

5. Tri-Dam's January 5, 2009 letter to Defendants with enclosures

6. Tri-Dam's November 16, 2009 letter to Defendants

7. Tri-Dam's February 23, 2011 letter to Defendants

8. July 2011 email correspondence between Chris Keller and Kevin Seibert

9. Email correspondence between Susan Larson and Ron Massei

10. Defendants' Title Insurance Policy

11. Defendants' Grant Deed

12. Defendants' Title Report

13. Tri-Dam's Easement on the Subject Property recorded on October 8, 1956

14. Tri-Dam's Easement on the Subject Property recorded on November 18, 1957

15. The CC&R's for the Subject Property recorded on May 18, 1992

16. Merle Holman's Deposition Exhibit 3

17. Merle Holman's Deposition Exhibit 4

18. Merle Holman's Deposition Exhibit 5

19. Merle Holman's Deposition Exhibit 6

20. Merle Holman's Deposition Exhibit 7

21. Merle Holman's Deposition Exhibit 8

22. Chris Keller's Deposition Exhibit 9

23. Chris Keller's Deposition Exhibit 10

24. Chris Keller's Deposition Exhibit 11

25. Chris Keller's Deposition Exhibit 12

26. Chris Keller's Deposition Exhibit 13

27. Chris Keller's Deposition Exhibit 14

28. Chris Keller's Deposition Exhibit 15

29. Chris Keller's Deposition Exhibit 16

30. Chris Keller's Deposition Exhibit 17

31. Chris Keller's Deposition Exhibit 18

32. Chris Keller's Deposition Exhibit 19

33. Paul Wild's Deposition Exhibit 1

34. Paul Wild's Deposition Exhibit 2

35. Paul Wild's Deposition Exhibit 3

36. Paul Wild's Deposition Exhibit 4

37. Paul Wild's Deposition Exhibit 5

38. Scott Mortensen's Deposition Exhibit 1

39. Scott Mortensen's Deposition Exhibit 2

40. Scott Mortensen's Deposition Exhibit 3

41. Scott Mortensen's Deposition Exhibit 4

42. Scott Mortensen's Deposition Exhibit 5

43. Scott Mortensen's Deposition Exhibit 6

44. Scott Mortensen's Deposition Exhibit 7

45. Scott Mortensen's Deposition Exhibit 8

46. Scott Mortensen's Deposition Exhibit 9

B. Defendants' Exhibits:

    1.  Plaintiff's Complaint

    2.  Declarations (2) of Marrs in Support of Tri-Dam's Motion for Summary Judgment

    3.  Declarations (2) of Pope in Support of Tri-Dam's Motion for Summary Judgment

Defendants adopt by reference all of the exhibits set forth in Tri-Dam's Exhibits, above.

**IX.  Discovery Documents To Be Used At Trial**

A. Plaintiff's Discovery Documents:

    1.  Chris Keller's entire deposition taken in this action on August 22, 2012.

    2.  Dawn Keller's entire deposition taken in this action on August 22, 2012.

    3.  Tri-Dam's Interrogatories Nos. 1 through 13 and Chris Keller's responses thereto.

    4.  Tri-Dam's Requests for Admission Nos. 1 through 6 and Chris Keller's responses thereto.

    5.  Tri-Dam's Requests for Production of Documents Nos. 1 through 37 and Chris Keller's responses thereto.

    6.  Tri-Dam's Requests for Production of Documents Nos. 1 through 35 and Dawn Keller's responses thereto.

A.    Defendants' Discovery Documents:

Defendants adopt by reference all of the exhibits set forth in Tri-Dam's Discovery Documents, above.

**X.  Further Discovery or Motions**

If necessary, the parties may file a trial brief on one or more issues regarding the specific relief sought from this Court, including but not limited to Tri-Dam's authority to enforce the SMP.

**XI.  Stipulations**

At this time, the parties do not propose any stipulations for pretrial or trial purposes.

**XII.  Amendments/Dismissals**

1   None at this time.

2   **XIII.  Settlement Negotiations**

3   The parties do not believe that a settlement conference would be helpful.

4   **XIV.  Agreed Statement of Facts**

5   The parties indicated that an agreed statement is "[n]ot [a]pplicable." The Court interprets

6   the parties' statement as an indication that the parties do not believe that presentation of all or part

7   of the action upon an Agreed Statement of Facts is feasible or advisable.

8   **XV.  Separate Trial Of Issues**

9   The parties have indicated their joint belief that a separate trial of any of the issues would

10  be neither feasible nor advisable.

11  **XVI.  Impartial Experts - Limitation Of Experts**

12  None requested.

13  **XVII.  Attorneys' Fees**

14  Each party has reserved the right to seek its attorney's fees if it is the prevailing party. The

15  Court will ascertain attorney's fees in the time and manner set forth in Local Rule 293.

16  **XVIII.  Further Trial Preparation**

17  **A.  Final Witness List**

18  The parties are ordered to file and serve their final list of witnesses by October 23, 2014.

19  Additionally, at that time Plaintiffs shall disclose the order of witnesses so that Defendants will be

20  prepared for cross-examination.

21  Except upon the showing set forth above in section VII, a party may not add witnesses to

22  the final list of witnesses, or to any other updated witness list, who are not disclosed in this Order

23  in Section VII.

24  **B.  Trial Briefs**

25  The parties are directed to file and serve a Trial Brief by September 18, 2014.  The parties

26  need not include in the Trial Brief any issue that is adequately addressed in a motion in limine, or

27  in an opposition brief to a motion in limine.  Any Responsive Trial Brief must be filed and served

28  by September 23, 2014.

### C.  Duty of Counsel to Pre-Mark Exhibits

The parties are directed to confer no later than September 3, 2014, for purposes of pre-marking and examining each other's exhibits.  All joint exhibits must be pre-marked with numbers preceded by the designation JT/-- (e.g., JT/1, JT/2).  All of Plaintiffs' exhibits shall be pre-marked with numbers.  All of Defendants' exhibits shall be pre-marked with letters.   The parties may agree to another marking system if desired.   (For example, if the parties agree, Plaintiffs could use the numbers one to 200 and Defendants could use the numbers 200 to 400.)

1.  Counsel shall create four (4) complete, legible sets of exhibits in binders as follows:

(a) Two sets of binders to be delivered to the Courtroom Clerk by October 23, 2014, one for use by the Courtroom Clerk and the other for the Court; and

(b)  One set for each counsel's own use.

If the parties desire, they may have a fifth set of binders to be used for the purposes of questioning witnesses.

2.  Counsel are to confer and make the following determination with respect to each proposed exhibit to be introduced into evidence, and to prepare separate indexes - one listing joint exhibits, and one listing each party's separate exhibits:

(a)  Duplicate exhibits, i.e., documents which both sides desire to introduce into evidence, shall be marked as a joint exhibit, and numbered as directed above.  Joint exhibits shall be listed on a separate index, and shall be admitted into evidence on the motion of any party, without further foundation.

(b)  As to exhibits that are not jointly offered, and to which there is no objection to introduction, those exhibits will likewise be appropriately marked, e.g., Plaintiffs' Exhibit 1 or Defendants' Exhibit A, and shall be listed in the offering party's index in a column entitled "Admitted In Evidence."  Such exhibits will be admitted upon introduction and motion of the party, without further foundation.

(c)  Those exhibits to which the only objection is a lack of foundation shall be marked appropriately, e.g., Plaintiffs' Exhibit 2 - For Identification, or Defendants' Exhibit B - For Identification, and indexed in a column entitled "Objection

Foundation."

(d) Remaining exhibits as to which there are objections to admissibility not solely based on a lack of foundation shall likewise be marked appropriately, e.g., Plaintiffs' Exhibit 3 - For Identification or Defendants' Exhibit C - For Identification, and indexed in a third column entitled "Other Objection" on the offering party's index.

3.  Each separate index shall consist of the exhibit number or letter, a brief description of the exhibit, and the three columns outlined above, as demonstrated in the example below:

INDEX OF EXHIBITS

| EXHIBIT # | DESCRIPTION | ADMITTED IN EVIDENCE | OBJECTION FOUNDATION | OTHER OBJECTION |
|---|---|---|---|---|

Two sets of the completed joint index and the separate indexes shall be delivered to the Courtroom Clerk with the two sets of binders.

The Court has no objection to counsel using copies.  However, the copies must be legible. If any document is offered into evidence that is partially illegible, the Court may sua sponte exclude it from evidence.

**D.  Discovery Documents**

By October 23, 2014, each party shall file a list of all discovery documents the party intends to use at trial.  The list shall indicate whether each discovery document has previously been lodged with the Clerk.  If the discovery document has not been previously lodged, the party shall so lodge the document with the courtroom deputy clerk by October 23, 2014.

**E.  Motions In Limine Hearing and Briefing Schedule**

The hearing for motions in limine will be held on September 29, 2014 at 1:30 p.m. in Courtroom 2.  In addition to addressing any filed motions in limine, at that time the Court will also settle, to the extent possible, any other matter pertaining to the conduct of the trial.

Counsel are expected to be fully cognizant of the legal issues involved in the case by the

date of the hearing for motions in limine. Unless counsel come to an agreement among themselves, they are required to file motions in limine regarding 1) whether or not defendants are entitled to a jury where the only relief sought by plaintiff is injunctive, and 2) what law applies to the interpretation of the Tri-Dam easement (i.e. whether the appropriate standard for determining whether or not the easement has been violated is "unreasonable interference" with use of the easement or if a violation can be found based on a use which would "in any way interfere with the use of said reservoir, or the waters therein, or tend to render unsafe or unsanitary either the reservoir created by said Dam or the margin thereof.").

By September 8, 2014, all motions in limine, with supporting points and authorities, shall be filed and served either personally or by facsimile upon opposing counsel.

By September 18, 2014, opposition to any motion in limine shall be filed and served either personally or by facsimile upon opposing counsel.  If a party does not oppose a motion in limine, that party shall file and serve in the same manner a Statement of Non-Opposition to that motion in limine.

By September 23, 2014, any reply to any motion in limine must be filed and served either personally or by facsimile upon opposing counsel. Filing of a reply is not required.

**F.  Morning Conferences During Trial**

During the trial, it is the obligation of counsel to meet with the Court each morning to advise the Court and opposing counsel as to what documents are proposed to be put into evidence that have not previously been admitted by stipulation, Court order, or otherwise ruled upon.  The Court will rule on those documents, to the extent possible, prior to the commencement of trial each day out of the presence of the jury.  If the ruling depends upon the receipt of testimony, the Court will rule as requested upon the receipt of such testimony.

The Court shall consider any other legal matter at morning conferences as well.  The Court does not wish to recess the trial to hear legal argument outside of the presence of the jury, and proper preparation by counsel will eliminate the need for that result.

**G.  Use Of Videotape and Computers**

Any party wishing to use a videotape or DVD for any purpose during trial shall lodge a

copy of the videotape with the courtroom deputy clerk by October 23, 2014.  If a written transcript of audible words on the tape is available, the Court requests that the transcript be lodged with the Court, solely for the aid of the Court.

If counsel intends to use a laptop computer for presentation of evidence, they shall contact the courtroom deputy clerk at least one week prior to trial.  The courtroom deputy clerk will then arrange a time for counsel to bring the laptop to the courtroom, and meet with a representative of the Information and Technology Department and receive a brief training session on how counsel's equipment interacts with the Court's audio/visual equipment.  If counsel intends to use PowerPoint, the resolution should be set no higher than 1024 x 768 when preparing the presentation.

## H.  Order of Witnesses

In order to make the trial operate efficiently and smoothly, each counsel has the continuing obligation to advise opposing counsel as to what witnesses he or she intends to call twenty-four (24) hours prior to calling that witness.

## I.  Proposed Jury Instructions

The parties shall file and serve proposed jury instructions by October 23, 2014, along with a copy of the instructions on a CD-ROM disc, preferably formatted for Microsoft Word 2010. Alternatively, electronic filers shall attach a copy of their proposed jury instructions to an e-mail, which the party shall send to awiorders@caed.uscourts.gov.

All proposed jury instructions shall be in duplicate.  One set shall indicate the party proposing the instruction, with each instruction numbered or lettered, shall cite supporting authority, and shall include the customary "Given, Given as Modified, or Refused," showing the Court's action with regard to each instruction.  The other set shall be an exact copy of the first set, but shall be a "clean" copy that does not contain the identification of the offering party, instruction number or letter, supporting authority, or reference to the court's disposition of the proposed instruction.

The parties are ordered to confer after the September 29, 2014, hearing regarding the motions in limine to determine which instructions they agree should be given. If any disputes

remain after resolution of the motions in limine, the parties are directed to identify for the Court the specific objections which exist as to each disputed instruction by October 23, 2014.

### J.  Voir Dire

The parties shall file and serve proposed voir dire questions, if any, by October 23, 2014.

Further, in order to aid the Court in the proper voir dire examination of the prospective jurors, counsel should lodge with the Court on October 23, 2014 a list of all prospective witnesses, including rebuttal witnesses, that counsel reasonably expect to call.  The purpose of the lists is to advise the prospective jurors of possible witnesses to determine if a prospective juror is familiar with any potential witness.

### K.  Agreed Summary of The Case

The parties shall lodge with the courtroom deputy clerk a joint agreed summary of the case, briefly outlining the positions of the parties by October 23, 2014.  The summary will be read to the jury panel at the outset of the trial solely for the purposes of assisting in the jury selection process.  The contents of the summary shall not be deemed to be evidence or an admission or stipulation by a party as to any contested fact or issue.

## XIX.  Objections to Pretrial Order

Any party may, within ten (10) calendar days after the date of service of this order, file and serve written objections to any of the provisions of this order.  Local Rule 283.  Such objection shall specify the requested corrections, additions or deletions.

## XX.  Rules of Conduct During Trial

### A.  General Rules

1.  All participants in the trial shall conduct themselves in a civil manner.  There shall be no hostile interchanges between any of the participants.

2.  All oral presentations shall be made from the podium, unless otherwise permitted by the Court.

3.  Sidebar conferences are discouraged.  Legal arguments or discussion of issues outside the presence of the jury should be done during recesses.

4.  Counsel shall advise their respective clients and witnesses not to discuss any aspect of

the case in the common areas of the courthouse accessible to the jurors, such as the lobby, the elevators, the hallways and the cafeteria.

**B.  Jury Selection**

1.  The Court will conduct voir dire to be supplemented by any written questions submitted by counsel prior to trial and after the Court has concluded its questioning of the jury panel.  The Court will allow 15 minutes of direct questioning by counsel.

**C.  Opening Statements**

1.  Counsel may use visual aids in presenting the opening statement.  However, any proposed visual aids shall be shown to opposing counsel before opening statement.

**D.  Case in Chief**

1.  Counsel shall have his/her witnesses readily available to testify so that there are no delays in the presentation of evidence to the trier of fact.

2.  At the close of each trial day, counsel shall disclose his/her anticipated witnesses and order of presentation for the next day, so that any scheduling or evidentiary issues may be raised at that time.

**E.  Witnesses**

1.  Before approaching a witness, counsel shall secure leave of Court to approach the witness.

2.  Before approaching a witness with a writing, counsel shall first show the writing to opposing counsel.

**F.  Exhibits**

1.  All exhibits shall be marked and identified in accordance with the instructions in the Pretrial Order.

2.  An exhibit shall not be published to the jury until it has been admitted into evidence and counsel has secured leave of Court to publish the exhibit.

3.  The Court usually will conduct an on the record review of the exhibits that have been admitted in evidence at the conclusion of each party's case in chief and after each party has rested its entire case.

**G.  Objections**

    1.  No speaking objections or arguments are permitted in the presence of the jury.  Counsel shall state the specific legal ground(s) for the objection, and the Court will rule based upon the ground(s) stated.  The Court will permit counsel to argue the matter at the next recess.

    2.  The Court will not assume that any objection made also implies with it a motion to strike an answer that has been given.  Therefore, counsel who has made an objection, and who also wishes to have an answer stricken, shall also specifically move to strike the answer.

**H.  Closing Argument**

    1.  Counsel may use visual aids in presenting the closing argument.  However, any proposed visual aids shall be shown to opposing counsel before closing argument.

FAILURE TO COMPLY WITH ALL PROVISIONS OF THIS ORDER MAY BE GROUNDS FOR THE IMPOSITION OF SANCTIONS, INCLUDING POSSIBLE DISMISSAL OF THIS ACTION OR ENTRY OF DEFAULT, ON ANY AND ALL COUNSEL AS WELL AS ON ANY PARTY WHO CAUSES NON-COMPLIANCE WITH THIS ORDER.

IT IS SO ORDERED.

Dated:   August 22, 2014                                     

                                SENIOR  DISTRICT  JUDGE

19